IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| AUDENCIO G. VILLASANA, III | § | |
|     TDCJ-CID #1262524 | § | |
| V. | § | C.A. NO. C-04-468 |
| | § | |
| JANET WILISON, ET AL. | § | |

## MEMORANDUM AND RECOMMENDATION
## ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff complains that, while incarcerated at the San Patricio County Jail, he was held in isolation and/or other restricted housing, despite his never being charged with a disciplinary infraction, in violation of his due process rights (D.E. 1) Defendants move for summary judgment[1] to deny plaintiff's claims (D.E. 48-1, 48-2). Plaintiff has filed a a response in opposition (D.E. 59), to which defendants have filed a reply (D.E. 61). For the reasons stated herein, it is recommended that defendants' motion for summary judgment be granted, and that plaintiff's claims be dismissed on the merits.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is presently incarcerated at the Eastham Unit in Lovelady, Texas. Plaintiff filed suit on September 10, 2004, alleging numerous civil rights claims, including failure to protect, deliberate indifference to serious medical needs, denial of access to the courts, and due process violations (D.E. 1). Plaintiff named as defendants Janet Wilison, Chief Jailer of the San Patricio County Jail, Sgt.

---

[1] Defendants style their pleading as a motion to dismiss and/or motion for summary judgment. Because defendants rely on matters outside the pleadings, the motion is evaluated under Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(b)(6).

Arnold Adams, Jailer Patrick LNU, and an unidentified nurse. Id. By Memorandum and Recommendation entered January 10, 2004, it was recommended that plaintiff's due process claims against Chief Wilison and Sgt. Adams be retained, and that his remaining claims be dismissed. Plaintiff did not file objections to the recommendation, and by order entered March 17, 2005, the Court adopted the recommendation (D.E. 33). Plaintiff seeks injunctive relief requiring a federal agency to monitor the San Patricio County Jail to prevent future civil rights violations, and monetary damages in the amount of 1.4 million. See D.E. 1 at 4.

### III. SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgment, defendants offer the following:

DSJ[2] Ex. A:   Disciplinary Separation Log;

DSJ Ex. B:   Affidavit of Chief Jailer Janet Wilison;

DSJ Ex. C:   Affidavit of Sgt. Arnold Adams;

DSJ Ex. D:   Photographs of shanks;

DSJ Ex. E:   Disciplinary hearing report dated August 21, 2994;

DSJ Ex. F:   Letter from plaintiff to Chief Wilison (undated); and

DSJ Ex. G:   Letter dated September 7, 2004, from plaintiff to Chief Wilison.

The following facts are not in dispute:

Plaintiff is a member of a Mexican prison gang known as Raza Unida or "RU." Wilison Aff't at 1. On June 15, 2004, plaintiff was arrested and placed in a holding cell at the San Patricio County

---

[2] "DSJ" refers to defendants' summary judgment motion (D.E. 48), "PR" refers to plaintiff's response (D.E. 59), and DR refers to defendants' reply (D.E. 61).

Jail ("the Jail"). DSJ Ex. A at 1; PR at 2. Plaintiff requested that he not be housed with other prisoners due to his gang status, at least until he could be housed with other RU gang members. Wilison Aff't at 2.

On June 16, 2004, plaintiff was transferred from the holding cell to Cell 357. DSJ Ex. A at 1. Cell 357 is a double-person cell, but there were no other persons occupying the cell with plaintiff. Wilison Aff't at 2. Plaintiff stayed in that cell for three days. Id.

On June 19, 2004, plaintiff was moved from Cell 357 to Cell Block A. DSJ Ex. 1 at 1. Block A is a nine-man cell block with individual cells. Wilison Aff't at 3. Block A was on lockdown at the time plaintiff was moved there. Id. Plaintiff was housed in an individual cell and allowed out for one hour a day to exercise. Id. Plaintiff did not receive any disciplinary cases while housed on Block A. Id.

On July 28, 2004, plaintiff was moved to G. Block where other members of the RU gang were being housed. DSJ Ex. A at 1; Wilison Aff't at 2. At some point prior to August 19, 2004, Sgt. Adams and other jail staff began receiving information that various inmates throughout the jail were making and hiding homemade weapons. Adams Aff't at 2. In response, Sgt. Adams ordered a shakedown of several cell blocks throughout the jail on the evening of August 19, 2004. Adams Aff't at 2, The shakedown included G Block. Id.

During the shakedown, Sgt. Adams and the jail staff discovered ten metal shanks hidden in plaintiff's mattress in his cell. Adams Aff't at 2; DSJ Ex. D. The shanks ranged in size, but all were capable of causing serious bodily injury. Adams Aff't at 2. Plaintiff became upset and agitated during the shakedown, and he made threats against Sgt. Adams, Sgt. Adams' family, and other jail staff. Adams Aff't at 2. Following the shakedown, Sgt. Adams had plaintiff placed in a padded cell for approximately 12 hours for a "cool down" period. Adams Aff't at 3.

On August 21, 2004, Chief Wilison and Sgt. Adams met with plaintiff to discuss finding the shanks in his cell. Wilison Aff't at 4. Chief Wilison told plaintiff that she would have to separate him from the rest of the inmate population because he posed a threat to the security and safety of the jail. Wilison Aff't at 4. Chief Wilison also told plaintiff that the move was to protect him from potential assaults by other inmates. Id. Plaintiff was not read his Miranda rights at this meeting. PR at 2. Plaintiff was moved out of G Block and into isolation Cell 1. DSJ Ex. A at 1; Wilison Aff't at 4; Adams Aff't at 3. While in isolation Cell 1, plaintiff wrote a threatening letter to Chief Wilison. DSJ Ex. F.

On October 5, 2004, plaintiff was moved from isolation Cell 1 to Cell AA-1. DSJ Ex. A at 1. Cell AA-1 is an 8-person cell, and it had no gang members in it. Wilison Aff't at 4. On October 25, 2005, plaintiff was transferred from the Jail to the Garza Unit. DSJ Ex. A at 1.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of witnesses. See id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be

4

admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein." FED. R. CIV. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 248-49. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

## V. DISCUSSION

**A.     Due Process**

Plaintiff claims that his due process right were violated because he was placed in restrictive housing without a disciplinary hearing or the opportunity to prove his innocence after the shanks were found in his cell. At the Spears[3] hearing held on December 29, 2004, plaintiff testified that no shanks were found in his cell.

Plaintiff was classified as a pretrial detainee at the time he arrived at the San Patricio County Jail. See Bell v. Wolfish, 441 U.S. 520, 523 (1979) (a pretrial detainee is a person who has been charged with a crime but has not yet been tried). As such, he was presumed innocent and could not be punished. Bell, 441 U.S. at 535 (pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment which requires that they not be punished). Id. at 537 n.16.

"In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, . . . the proper inquiry is whether those conditions amount to punishment of the detainee." Id. at 535. For a pretrial detainee, the standard to apply in analyzing a constitutional claim depends on whether the claim is classified as a challenge to conditions of confinement or an "episodic act or omission." Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997) (en banc).

A conditions of confinement case is an attack on "general conditions, practices, rules, or restrictions of pretrial confinement." Scott, 114 F.3d at 53. In that instance, a constitutional violation exists only if the condition is not reasonably related to a legitimate, non-punitive governmental objective. Id.; see also Serton v. Sollie, No. 02-61010, 2003 WL 22849840, at *2 (5th Cir. Dec. 2,

---

[3]Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

6

2003) (per curiam) (citing Hare v. City of Corinth, 74 F.3d 633, 640 (5th Cir. 1996) (en banc)). Plaintiff is attacking the restrictions of his personal confinement. D.E. 1. As such, a constitutional violation exists only if the condition is not reasonably related to a legitimate, non-punitive governmental objective. Scott, 114 F.3d at 53.

Defendants have presented summary judgment evidence establishing that, before and after August 19, 2004, the reason plaintiff was separated from the general population was for the safety and security of the jail, jail staff, and even for plaintiff himself. See Wilison Aff't at 4; Adams Aff't at 3. When he arrived at the Jail in June, 2004, plaintiff requested that he be separated from other prisoners due to his gang status, and this was done. Wilison Aff't at 2. After he was moved to G Block and housed with other RU gang members, the jail staff became aware of a security problem, namely, that weapons were being made and hidden in the inmates' cells. Adams Aff't at 2. Following a shakedown, 10 shanks were found in plaintiff's cell. See DSJ Ex. D. Thereafter, plaintiff was placed in isolation. Wilison Aff't at 4; Adams Aff't at 3.

In Olgin v. Darnell, 664 F.2d 107 (5th Cir. 1981), a pretrial detainee assaulted and injured another prisoner. As a result, he was transferred to a "single cell" without prior written notice or a hearing. He remained in the cell for two weeks. For one day during the two-week period, the plaintiff was given no clothing, was denied legal materials and a mattress because he had threatened to burn the jail down. Id. at 107-08. The Fifth Circuit found that:

> "[t]aken as a whole, the testimony explains that the prisoner was stripped as part of a procedure designed not only to isolate him but to restore him to a rational state. Although there might be a punitive element in the event from the prisoner's point of view, the purpose was not punishment and the taking of the prisoner's clothing cannot be viewed in isolation. Under the circumstances, depriving [the plaintiff] of his clothes for one day was not punishment in the constitutional sense because it was rationally related to a legitimate nonpunitive governmental purpose and was not excessive in relation to that purpose. . . . We affirm the district judge's conclusion that

7

> the restrictions and conditions placed on [the plaintiff] were not arbitrary or purposeless."

Id. at 109; see also Serton, 2003 WL 22849840, at *2 (finding no due process violation where summary judgment evidence showed that, although pretrial detainee was housed in administrative segregation without pre-deprivation notice and hearing, his placement was for his own protection and was not punishment for a disciplinary violation).

In this case, plaintiff was placed in isolation without a pre-deprivation hearing or notice after weapons were found in his cell under his mattress. The reason for placing plaintiff in isolation was to ensure the safety and security of the Jail and, in addition, to protect plaintiff from other inmates. Wilison Aff't at 4. See Bell, 441 U.S. at 540 ("The effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inferences that such restrictions are intended as punishment.").

Plaintiff offers no evidence to suggest that defendants' decision to place him in isolation was arbitrary or purposeless. In his response, plaintiff objects to the shakedown and finding of shanks in his cell. PR at 2-3. He argues that defendants failed to advise him of his Miranda rights, failed to prove that it was his bunk and mattress in which the shanks were found, and failed to photograph the shanks in their "original criminal location." PR at 3. Plaintiff's criticism of the manner in which the shakedown was performed has no bearing on defendants' decision to place him in isolation.

Moreover, although plaintiff argues that defendants "planted" the shanks in his cell (PR at 7), he offers no evidence to support this allegation. In contrast, in their reply to plaintiff's response, defendants offer the affidavit of Sergeant Joe Gaitan, an investigator with the San Patricio County Sheriff's Office, who was involved in the August 19, 2004 shakedown. See D.E. 61, Ex. A.

8

According to Sergeant Gaitan, he personally found the shanks in plaintiff's assigned bunk. Id. Plaintiff's bald, unsupported, and conclusory allegations do not raise a fact issue. See Freeman v. Texas Dep't of Crim. Justice, 369 F.3d 854 (5th Cir. 2004) (nonmovant cannot satisfy its burden of setting forth specific facts showing a genuine issue for trial with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence).

The uncontroverted evidence establishes that a security issue arose at the Jail, necessitating a shakedown throughout the jail, including G Block. Wilison Aff't at 3; Adams Aff't at 2. There is no indication that plaintiff was singled out for a cell search or in any other manner targeted unfairly. His placement in isolation was to maintain the security of the Jail and the safety of staff and inmates, including plaintiff.

Plaintiff suggests that defendants had a motive to punish him because they have had "personal problems" with him since the 1980s. In fact, plaintiff has been an inmate at the San Patricio County Jail on several occasions. Wilison Aff't at 1. In a January 8, 2004 letter to Judge Joel Johnson of the 156th District Court, San Patricio County, Chief Wilison informed Judge Johnson of her concerns about the RU gang activity. See DSJ Ex. A. In the letter, Chief Wilison noted that plaintiff and several RU gang members were the most destructive inmates to inhabit the Jail. Id. Chief Wilison reported that plaintiff and RU gang members constantly caused fights and repeatedly threatened jail staff. Id. As a result of her concerns, Chief Wilison issued a memo dated May 18, 2004, directing all jailers to be on special alert. DSJ Ex. B.

Contrary to establishing motive to plant evidence against plaintiff, this evidence bolsters defendants' decision to isolate plaintiff: plaintiff had a history of assaultive behavior at the Jail and both Chief Wilison and Sgt. Adams were aware of his history. Wilison Aff't at 2; Adams Aff't at 1-2. Clearly, defendants' decision to isolate plaintiff was a legitimate and nonpunitive action because jail

9

officials have a legitimate objective of maintaining security. See Grabowski v. Jackson County Public Defenders Office, 47 F.3d 1386, 1992 (5th Cir. 1995) (discussing Block v. Rutherford, 468 U.S. 576 (1984)). Plaintiff has failed to come forward with any facts to establish that his placement in isolation was punitive.

## VI. CONCLUSION

For the foregoing reasons, it is recommended that defendants' motion for summary judgment (D.E. 48-1, 48-2), be granted, and that plaintiff's claims be dismissed with prejudice.

Respectfully submitted this 1st day of September, 2005.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to FED. R. CIV. P. 72(b), 28 U.S.C. § 636(b)(1)(C), and Article IV, General Order No. 2001-6, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).